IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SANFORD LEONARD RYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:22-CV-501-RAH-KFP |
| | ) | |
| KENNETH COOK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

Plaintiff Sanford Ryles, proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action alleging a constitutional violation during his arrest by the Russell County Sheriff's Office. Before the Court are the parties' Motions for Summary Judgment (Docs. 96, 98), Defendants' brief (Doc. 97), and Defendants' response in opposition (Doc. 113). Upon consideration of the record, the undersigned recommends Defendants' Motion for Summary Judgment (Doc. 96) be GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 98) be DENIED.

## II.    JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over this case arising from claims under 42 U.S.C. § 1983. Personal jurisdiction and venue are not contested, and the Court concludes that venue properly lies in the Middle District of Alabama. 28 U.S.C. § 1391.

## III.    SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The relevant rules of substantive law dictate the materiality of a disputed fact." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

To survive a properly supported motion for summary judgment, a plaintiff must produce some evidence supporting his constitutional claims. *See Celotex Corp.*, 477 U.S. at 322. He must "go beyond the pleadings and . . . designate 'specific facts showing

2

that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (per curiam); *Fullman v. Graddick*, 739 F.2d 553, 556–57 (11th Cir. 1984). Consequently, when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case" on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322–23. Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Id.* at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party and "pro se complaints are entitled to liberal interpretation by the courts," a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48 (emphasis omitted)). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* "*Scott* stands for the commonsense proposition that when a video proves that the plaintiff can't

3

be telling the truth, we don't accept the facts as he alleges them, even for the purposes of deciding a summary-judgment motion." *Brooks v. Miller*, 78 F.4th 1267, 1271 (11th Cir. 2023).

## IV.    PROCEDURAL HISTORY

Plaintiff filed this action on August 18, 2022. Doc. 1. Plaintiff was twice ordered to file an amended complaint (Docs. 12, 14), which ultimately resulted in the operative Second Amended Complaint on March 22, 2023 (Doc. 15).

This case began under the Court's since-abandoned special report procedure with Defendants' Special Report (as amended) (Docs. 35, 49, 59, 60) and Plaintiff's Response to Defendants' Special Reports (Doc. 58, 61). After the Court vacated the special report order and set a schedule for the case (Doc. 84), Defendants Berger, Cabarrus, Chambers, Cook, Hagberg, and Parker filed their motion for summary judgment and accompanying brief (Docs. 96, 97) and Plaintiff filed his own Motion for Summary Judgment (Doc. 98).

On October 22, 2025, the Court ordered the parties to respond to the respective summary judgment motions. Doc. 100. Neither Defendants nor Plaintiff complied with the Court's Order. On December 10, 2025, the Court again ordered the parties to respond to the respective summary judgment motions by December 31, 2025. Doc. 110. Defendants filed a response. Doc. 113. Plaintiff did not.

On December 31, 2025, Plaintiff filed a "Declaration of Notice By The Plaintiff Sanford Leonard Ryles" (Doc. 112) in which he asserted that he had "not received any correspondences [sic] from this Hon. Court since November 2025." The Court then gave

4

Plaintiff yet another deadline to respond to Defendants' summary judgment motion, extending his response deadline to February 20, 2026. Doc. 114. On February 23, 2026, Plaintiff filed a Declaration. Doc. 115

## V.    FACTUAL BACKGROUND

In the early morning hours of August 9, 2020, around 2:00 a.m., Defendants David Parker, Kevin Hagberg, and Matthew Berger were on-duty police officers serving patrol for the Russell County Sheriff's Office. Doc. 35-1 ¶ 3; Doc. 35-6 ¶¶ 2–3. During the patrol, Berger was the shift supervisor and Hagberg and Parker were the deputies on shift. Doc. 35-1 ¶ 3; Doc. 35-6 ¶ 2–3. Berger was conducting an unrelated traffic stop when he observed a vehicle drive by twice. Doc. 35-6 ¶ 4. After observing this behavior, he contacted Parker to be on the lookout for this vehicle because this conduct was suspicious. *Id.*

When Berger contacted Parker regarding this vehicle, Berger told him to look out for a white Cadillac "being driven by a possibly intoxicated driver." Doc. 35-1 ¶ 3.[1] While Parker was on the lookout, he "observed a white Cadillac . . . travelling on Highway 165 at a high rate of speed." *Id.* ¶ 4. He "followed the vehicle as it turned onto

---

[1] Parker, Hagberg, and Berger testified at Plaintiff's trial for the resulting charges of possession of marijuana, first degree, resisting arrest, driving under the influence, and speeding and in his parole hearing, which was based on a violation of his conditions for the new marijuana possession offense. *See* 98-3 at 58–61, 89–90, 115–85, 193–291, 354–68, 376–86. There are some minor discrepancies among the testimonies of these Defendants in their declarations offered in this case, the trial, and the parole hearing, but their testimonies are generally consistent with the declarations and the video evidence relied upon for their summary judgment motion, and Ryles cites to no material discrepancies.

Following the 2023 trial, the jury returned a verdict of not guilty on the possession and DUI charges and guilty on the resisting arrest and speeding. Doc. 98-3 at 404. The underlying state charges and the disposition of those charges or any related appeal is not before this Court.

Highway 431," used the speedometer on his patrol car to pace the Cadillac "at over 80-mph in a 65-mph speed zone," and locked the vehicle's speed on radar travelling at 80-mph. *Id.* Parker activated his emergency flashers and followed the Cadillac for a couple of miles until the driver pulled over. *Id.*

After coming to a stop around 2:25 a.m., Parker exited his patrol vehicle and walked to the driver's side of the Cadillac. *Id.* ¶ 5. The driver of the vehicle was Plaintiff Sanford Leonard Ryles. *Id.* ¶¶ 4–5. Plaintiff's window was cracked slightly at the top and Parker asked Plaintiff for his driver's license. *Id.* ¶ 5; Doc. 35-2 at 02:25:56–02:26:01. Plaintiff provided Parker with his license through the partially opened window, and Parker asked him why he was so nervous. *Id.* at 02:26:01–02:26:30; Doc. 35-1 ¶ 5. Plaintiff responded that he was scared and didn't want Parker to kill him. Doc. 35-2 at 02:26:28–02:26:32. Parker instructed Plaintiff to step out of the car and talk to him. *Id.* at 02:26:32–02:26:38. After Parker opened the door, Plaintiff refused to step out because "all he wanted was to sit right here." *Id.* at 02:26:38–02:26:42; Doc. 35-1 ¶ 6.

Parker told him, "That's fine, you can step out and talk to me," and Parker relayed aloud that Plaintiff's behavior was making Parker nervous. Doc. 35-2 at 02:26:42–02:26:45. Parker explained to Plaintiff that he was pulled over for speeding. *Id.* at 02:26:50–02:26:53. Plaintiff complained that he already gave him his license *(id.* at 02:26:53–02:26:55), but Parker told Plaintiff that he needed to exit the vehicle for both

6

of their safety so that Parker could conduct a *Terry*[2] frisk for weapons. *Id.* at 02:26:54–02:27:30; Doc. 35-1 ¶ 6.

Plaintiff eventually got out of the vehicle, and Parker conducted the pat-down and asked Plaintiff about his alcohol consumption. Doc. 35-2 at 02:27:37–02:27:59. Plaintiff denied drinking. *Id.* at 02:27:50–02:27:57. The following exchange occurred:

Parker: "What's going on tonight man?"

Plaintiff: "Nothing's going on, man. I'm scared."

Parker: Why are you scared?

Plaintiff: "I'm scared of you."

Parker: "Why are you scared of me? Have I gave [sic] you a reason to be scared of me? If it makes you feel any better, I haven't shot anybody, I haven't killed anybody, I don't beat people up. I stopped you for speeding[;] I am investigating further based on your behavior."

*Id.* at 02:28:39–02:29:11. After this, Plaintiff stood up but was instructed to sit down by Deputy Hagberg who had just arrived at the scene. *Id.* at 02:29:21–02:29:28.

Plaintiff complied and sat down. *Id.* at 02:29:30–02:29:40. Parker told Plaintiff he was going to conduct a horizontal gaze nystagmus (HCN) test on him, and he asked Plaintiff to look up and track Parker's finger. *Id.* at 02:30:57–02:31:03; Doc. 35-4 at 02:30:50–02:30:57. Rather than following Parker's instruction, Plaintiff looked down at the ground and retorted, "Sir, what I need you to do – [inaudible] drivers license." Doc. 35-2 at 02:31:03–02:31:06; Doc. 35-4 at 02:30:56–02:31:01. Parker interrupted Plaintiff observing, "Look, I can smell alcohol on your breath." Doc. 35-2 at 02:31:06–02:31:09; Doc. 35-4 at 02:31:00–02:31:05.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (defining the circumstances when a police officer can conduct a reasonable search for weapons).

Parker and Hagberg instructed Plaintiff to the back of the car, but Plaintiff refused and told the officers to "please leave me alone sir." Doc. 35-2 at 02:31:15–02:31:21; Doc. 35-4 at 02:31:08–02:31:16. Parker and Hagberg again told Plaintiff to move behind his vehicle, but Plaintiff remained seated. Doc. 35-2 at 02:31:25–02:31:55; Doc. 35-4 at 02:31:30–02:31:50. As the officers urged Plaintiff to go to the back of his vehicle, Plaintiff became irritable, raising his voice at the officers and interrupting them. Doc. 35-2 at 02:31:58–02:32:13; Doc. 35-4 at 02:31:50–02:32:08.

Plaintiff's phone started ringing and the officers allowed him to answer it. Doc. 35-2 at 02:32:14–02:32:20. He muttered "now you want to shoot." *Id.* at 02:32:20–02:31:22; Doc. 35-4 at 02:32:15–02:32:18. The officers rebutted that "nobody wants to shoot you." Doc. 35-2 at 02:32:22–02:31:25; Doc. 35-4 at 02:32:15–02:32:18. While Plaintiff talked to someone on the phone, the officers again instructed him to proceed to the back of the vehicle. Doc. 35-2 at 02:32:22–02:32:35; Doc. 35-4 at 02:32:18–02:32:35. Plaintiff failed to comply with the instruction (Doc. 35-2 at 02:32:30–02:34:18), despite the urging from the person on the other end of Plaintiff's phone call. *Id.* at 02:33:05–02:33:41; Doc. 35-4 at 02:33:00–02:33:35.

Parker reaffirmed that he needed Plaintiff to comply with directions so that they could conduct field sobriety tests. Doc. 35-2 at 02:33:45–02:34:00; Doc. 35-4 at 02:33:39–02:33:40. If he passed the tests, Plaintiff would be free to go, but if he did not pass then he would be arrested for DUI. Doc. 35-1 ¶ 7; Doc. 35-2 at 02:33:45–02:34:05; Doc. 35-4 at 02:33:40–02:33:55.

Plaintiff stood firm in his refusal to comply. Doc. 35-2 at 02:34:00–02:34:17. Parker then attempted to place Plaintiff under arrest, but Plaintiff resisted. Doc. 35-1 ¶ 8. When Parker reached toward Plaintiff to grab Plaintiff's arm, Plaintiff stood up. Doc. 35-2 at 02:34:15–02:34:21. Parker grabbed Plaintiff's left arm and continued holding onto Plaintiff's arm while walking with him behind Plaintiff's vehicle. *Id.* at 02:34:21–02:34:40. Hagberg grabbed Plaintiff's other arm and assisted in this action. Doc. 35-4 at 02:34:14–02:34:20. Parker and Berger assisted with restraining both of Plaintiff's arms. Doc. 35-2 at 02:34:21–02:34:54; Doc. 35-4 at 02:34:14–02:34:37; Doc. 35-3 ¶ 4. At that time, Plaintiff was slightly bent over facing the trunk of his car, while his hands were behind his back being handcuffed. Doc. 35-2 at 02:34:21–02:34:54; Doc. 35-4 at 02:34:47–02:35:04. While standing behind the Cadillac, Plaintiff remained in a position with the front of his legs pressed against the vehicle. Doc. 35-4 at 02:34:48–02:35:17. Plaintiff yelled and twisted around accusing the officers of trying to break his arm while the officers continued to hold onto him after he was handcuffed. *Id.* at 02:35:05–02:35:20. Plaintiff proclaimed that he was being assaulted and sat down on the ground. *Id.* at 02:35:20–02:35:35.

The officers instructed Plaintiff to stand up, and Parker guided Plaintiff to Parker's vehicle where Hagberg assisted. *Id.* at 02:35:30–02:37:00. Plaintiff resisted getting into the patrol vehicle, so one of the officers "pulled his upper body from the other side of the vehicle while the other picked up his legs and maneuvered them inside the car." Doc. 35-3 ¶ 5; Doc. 35-4 at 02:36:30–02:37:00.

9

After securing Plaintiff in the vehicle, Parker left the scene with Plaintiff, and Berger and Hagberg remained to conduct the inventory search of Plaintiff's vehicle. Doc. 35-6 ¶ 5; Doc. 35-3 ¶ 6; Doc. 35-5; Doc. 35-7. Berger and Hagberg had difficulty accessing the trunk. Doc. 35-3 ¶ 7. The officers did not destroy any items during the inventory search, and they also did not remove seats or carpet during the search. *Id.* ¶ 6. When Berger and Hagberg finally gained access to the trunk, they discovered marijuana and scales. Doc. 35-1 ¶ 11; Doc. 35-3 ¶ 6; Doc. 35-6 ¶ 5. Once done with the search, Berger waited for the tow truck to complete the vehicle impound process. Doc. 35-6 ¶ 6–7.

At the jail, Parker asked Plaintiff to blow into the Dragger machine for a blood alcohol test, but Plaintiff refused. Doc. 35-1 ¶ 9. Parker completed a certificate of breath alcohol analysis showing his refusal, which was entered into the system at 3:46 a.m. Doc. 35-1 ¶ 9.

## VI.    PLAINTIFF'S    SECOND    AMENDED    COMPLAINT    AND DECLARATION

As pleaded in Plaintiff's Second Amended Complaint, he names six Defendants: David Parker, Kevin Hagberg, Matthew Berger, Trevion Cabarrus, Kenneth Cook, and Shannon Chambers. Doc. 15 at 2. Plaintiff asserts claims under 42 U.S.C. § 1983 based on allegations Defendants violated his rights under the Fourth and Fourteenth Amendments with respect to the traffic stop, the search of his vehicle, and the force used during his arrest; he alleges a conspiracy claim related to the alleged constitutional

violations; and, finally, Plaintiff asserts state law assault and battery claims—a total of six counts. Doc. 15.

Plaintiff's February 16, 2026, declaration is largely comprised of legal conclusions repeating those in his Second Amended Complaint. For example, he asserts, without supporting factual assertions or evidentiary references, that he was "racially profiled," that both he and his vehicle were illegally searched, and that he was assaulted and illegally arrested. Doc. 115 at 4. Elsewhere, Plaintiff asserts that "the facts of this case are sufficient" to establish that Defendants were not operating in their discretionary authority "because their actions related to my unlawful arrest[.]" Doc. 115 at 6. Plaintiff disputes there was probable cause to stop his vehicle, search him, or search his vehicle and asserts there was no basis for any force used against him. Doc. 115 at 9–11.[3]

The only potential factual dispute Plaintiff raises in his declaration is his assertion that he was not drinking or speeding on the evening at issue. However, his proclamation of innocence (as to the basis for his vehicle being pulled over and his arrest) does not raise a genuine issue of material fact. As discussed, *infra*, the Court need not determine whether Plaintiff was speeding or whether he had been drinking in order to determine whether the officers had probable cause for their actions. Plaintiff's dispute about the

---

[3] In his declaration, Plaintiff also appears to be challenging his current detention, but that issue is not before the Court in this § 1983 action. To the extent Plaintiff's opposition presents additional allegations of constitutional violations that were not affirmatively pleaded in his Second Amended Complaint, they are not properly before the Court, as Plaintiff may not amend his pleading to raise new claims through his opposition. *See Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting new basis for pending claim raised during summary judgment proceedings); *see also Chavis v. Clayton Cnty. Sch. Dist*., 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (refusing to address new theory raised during summary judgment because plaintiff had not amended complaint).

accuracy of their belief based on the facts and circumstances they assessed at the time is inconsequential. After reviewing Plaintiff's declaration in its entirety, the undersigned finds it presents no genuine dispute of material fact concerning the issues in this case. *Scott*, 550 U.S. at 380 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

While Plaintiff's Second Amended Complaint and his declaration are sworn, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury should believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The Supreme Court has found that when there is video evidence that "utterly discredit[s]" Plaintiff's alleged version of events, that the court should "view[] the facts in the light depicted by the videotape." *Id.* at 380–81.

Accepting Plaintiff's version of events would require the Court to ignore Defendants' video evidence. Because Plaintiff's version of events requires the Court to adopt a wholly alternative fact pattern "which is blatantly contradicted by the record," *Scott*, 550 U.S. at 380, the Court will not adopt Plaintiff's version of the facts for purposes of deciding summary judgment.

## VII.   DISCUSSION

In Count I,[4] Plaintiff alleges Hagberg, Parker, and Berger violated Plaintiffs' Fourth and Fourteenth Amendment rights. Doc. 15 at 3. In Count II,[5] Plaintiff alleges Parker, Hagberg, and Berger engaged in a conspiracy to conduct an unlawful stop, search, and seizure in violation of the Fourth and Fourteenth Amendments. Doc. 15 at 3–4. In Count III, Plaintiff alleges Parker, Hagberg, and Berger violated his Eighth Amendment[6] rights by using excessive force during his arrest and for failing to intervene in the use of excessive force. Doc. 15 at 4–5. In Count IV, Plaintiff claims that Parker, Hagberg, and Berger committed the state law tort of assault and battery during his arrest. Doc. 15 at 4–5. In Count V, Plaintiff claims that Parker, Hagberg, and Berger conducted an illegal search and seizure of his vehicle in violation of the Fourth Amendment. Doc. 15 at 6. Finally, in Count VI,[7] Plaintiff claims that Parker, Hagberg, and Berger conducted a false arrest, false imprisonment, and malicious prosecution against him in violation of the Fourth and Fourteenth Amendments. Doc. 15 at 6–8.

---

[4] Plaintiff also names Defendant Cook in the fact section related to this claim. Doc. 15 at 3.

[5] Plaintiff also names Defendant Cabarrus in the fact section related to this claim. Doc. 15 at 3–4.

[6] The Eighth Amendment does not govern the actions of officers during the course of an arrest. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) ("The Eighth Amendment forbids the infliction of 'cruel and unusual punishments,' and the Supreme Court has interpreted it to prohibit the use of excessive force against convicted prisoners." (quoting U.S. Const. amend. XIV)). Rather, the applicable constitutional framework governing an officer's use of force during an arrest is the Fourth Amendment's "objective reasonableness standard." *Hernandez v. Mascara*, 368 F. App'x 80, 81 (11th Cir. 2010) (per curiam) ("[A] § 1983 claim for excessive force should be analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989))). Thus, though Plaintiff identifies his claim as an "Eighth Amendment" claim, the Court will analyze this claim pursuant to the Fourth Amendment's objective reasonableness standard.

[7] Plaintiff also names Defendant Chambers in the fact section related to this claim. Doc. 15 at 6–7.

Plaintiff alleges all six counts against Defendants Hagberg, Parker, and Berger in their official and individual capacities. Doc. 15 at 8. The Court will first address Plaintiff's official capacity claims against Defendants Parker, Hagberg, and Berger alleged in Counts I–VI. The Court will then address Plaintiff's conspiracy claim alleged against Parker, Hagberg, Berger, and Cabarrus in Count II.

Next, the Court will evaluate whether Plaintiff's constitutional claims in Counts I, II, III, V, and VI are barred by qualified immunity. Specifically, the Court will begin by looking at whether Cook, Chambers, and Cabarrus are entitled to qualified immunity for the claims stated against them in Counts I, II, and VI.

Plaintiff's false arrest, malicious prosecution, and false imprisonment claims in Counts I and VI will be assessed in light of the qualified immunity defense raised by Hagberg, Berger, and Parker. To the extent Count II contains an allegation of a constitutional violation related to the "unlawful stop, search, and seizure" of Plaintiff's vehicle, (Doc. 15 at 3), the Court will consider this aspect of Count II alongside Counts I and VI.

Separately, the Court will assess Plaintiff's claim of excessive force and failure to intervene in Count IV. Then, the Court will analyze Plaintiff's Count V claim that the search of his vehicle violated the Fourth Amendment. Finally, the Court will address Plaintiff's state law assault and battery tort claims contained in Count IV.

A.    **Plaintiff's official capacity claims against Parker, Hagberg, and Berger in Counts I–VI are due to be dismissed.**

Plaintiff asserts all claims against Parker, Hagberg, and Berger in their official and individual capacities. Doc. 15 at 8. Defendants argue that the official capacity claims are due to be dismissed because they are state officials sued in their official capacity and are thus not persons pursuant to § 1983. Doc. 97 at 17–18.

"Section 1983 creates a private cause of action to vindicate certain 'deprivation[s] of any rights, privileges, or immunities secured by the Constitution and laws[.]'" *United States v. Oropesa*, 159 F.4th 912, 916 (11th Cir. 2025) (first alteration in original) (quoting 42 U.S.C. § 1983). "States and their officials no longer need to rely exclusively on eleventh amendment immunity to avoid liability in their official capacities in section 1983 cases." *Carr v. Florence*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). "[T]he sheriff is a state official, even though [the sheriff] is paid by the county." *Carr*, 916 F.2d at 1526.

Parker, Hagberg, and Berger are state officials as sheriff's deputies. *Id.* at 1527 (holding "that the sheriff's eleventh amendment immunity also extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego."). Under § 1983, "state officials acting in their official capacities are not 'persons' subject to liability." *Id.* at 1525 n.3 (citing *Will*, 491 U.S. at 58). For this reason, any claims in Counts I–VI stated against Parker, Hagberg, and Berger in their official capacity are due to be dismissed.

15

**B.      Plaintiff's conspiracy claim in Count II is due to be dismissed.**

In Count II, Plaintiff alleges that Defendants Parker, Hagberg, and Berger "conspire[ed] maliciously" to orchestrate an unlawful stop, search, and seizure. Doc. 15 at 3. He further alleges that "Defendant Cabarrus advised Defendant Parker that the Plaintiff had no warrants for his arrest." Doc. 15 at 4. Defendants Parker, Hagberg, Berger, and Cabarrus argue that the intracorporate conspiracy doctrine bars this claim. Doc. 97 at 18–20.

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010). A plaintiff making such a claim "must prove the defendants 'reached an understanding' to violate the plaintiff's constitutional rights." *Id.* (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992)). "[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Id.* at 1261 (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)). Pursuant to this doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id.* (quoting *McAndrew*, 206 F.3d at 1036). "[This] doctrine applies to public entities such as the City and its personnel." *Id.* (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001)).

16

"[T]he question of whether a defendant acted within the scope of his employment is distinct from whether the defendant acted unconstitutionally." *Id.* Essentially, the "scope of employment" inquiry asks "whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Id.* "Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers." *Mears v. Brett McCulley*, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012).[8]

Here, Plaintiff's allegations involve claims against employees of the same sheriff's office. The intracorporate conspiracy doctrine applies to public entities like a sheriff's office. *Id.* Thus, the intracorporate conspiracy doctrine bars a claim of conspiracy against Parker, Hagberg, Berger, and Cabarrus if they were acting in the scope of their employment.

Plaintiff claims that the events surrounding this alleged conspiracy occurred during the traffic stop. Doc. 15 at 4. The evidence introduced by Defendants' body camera and in their declarations indicate that Plaintiff's claims relate to activities Defendants engaged in while working, including conducting vehicle stops and communicating via their dispatch to relay identification information. *See* Doc. 49-1, Doc. 35-1, Doc. 35-3, Doc. 35-6, Doc. 35-2, Doc. 35-4. The activities Plaintiff complains

---

[8] Here, and elsewhere in this Recommendation, the Court cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

of are "job-related duties" of the officers and 911 dispatchers. *See Grider*, 618, F.3d at 1261–62 (describing the job duties of police officers in the context of the intracorporate conspiracy doctrine). Defendants have established they were employees of the same entity, and they were acting within the scope of their employment during the events in question.

Plaintiff argues that the intracorporate conspiracy doctrine is not applicable here because all of the exceptions apply. Doc. 98 at 14–15.[9] Plaintiff does not indicate which facts show how any exception applies, and he raises no argument beyond this conclusory statement. *See id.*

Exceptions to the intracorporate conspiracy doctrine include: (1) "convictions involving criminal charges of conspiracy"; (2) "where the employee has an 'independent personal stake' in his unconstitutional acts and is not acting to further the corporation's illegal objective"; or (3) "where the employees 'engage in a series of discriminatory acts as opposed to a single action' over a significant period of time in the employment setting." *Grider*, 618 F.3d at 1262 (quoting *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768–70 n.9 (11th Cir. 2000)).

While Plaintiff lists out these exceptions and argues they all apply (Doc. 98 at 14–15), Plaintiff does not provide any supporting argument or evidence, and he offered no reply to challenge Defendant's position that the doctrine applies here. "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or

---

[9] In his declaration, Plaintiff repeats his unsupported conclusion that all of the exceptions to the intracorporate conspiracy doctrine apply in this case. Doc. 115 at 7–8.

defense is unopposed." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (per curiam) (alteration in original) (quoting *Kramer v. Gwinnett Cnty.*, Ga., 306 F. Supp.2d 1219, 1221 (N.D. Ga. 2004)). Further, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Id.* (alteration in original) (quoting *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)). Thus, because Defendants have demonstrated that they were employees of the same employer, and because they were acting within the scope of their employment during the alleged incident, the intracorporate conspiracy doctrine applies. For this reason, Defendants are due to be awarded summary judgment on Plaintiff's Count II conspiracy claim.

### C.     <u>**Defendants are entitled to qualified immunity.**</u>

All Defendants assert they are entitled to qualified immunity from the constitutional claims asserted in Counts I, II, III, V, and VI. *See* Doc. 97 at 20, 25–27, 31 n.8.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)).

> To determine whether a government actor is entitled to qualified immunity from a section 1983 claim, "we engage in a burden-shifting analysis." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023). The burden first rests with the government actor, who "must show that he was acting within the scope of his discretionary authority when he committed the challenged

acts." *Id.* If the government actor establishes that he acted within his discretionary authority, "the burden shifts" to the complaining party, "who must show that qualified immunity is not appropriate." *Id.* To make that showing, the complainant must establish that: (1) the government actor violated his constitutional or statutory right and (2) the unconstitutionality of that conduct was clearly established at the time of the violation. *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 660 (11th Cir. 2022).

*Hughes v. Locure*, 2026 U.S. App. LEXIS 2602, at *7 (11th Cir. Jan. 29, 2026).

"The clearly established requirement is meant to provide 'notice' to officials that 'their conduct is unlawful.'" *Massey v. Dorning*, 611 F. Supp. 3d 1301, 1321 (N.D. Ala. 2020) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "The Eleventh Circuit has outlined three ways by which a right may be clearly established: '(1) case law with indistinguishable facts[;] (2) a broad statement of principle within the Constitution, statute, or case law [;] or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Id.* (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)).

### 1.    Defendants Cook, Chambers, and Cabarrus are entitled to qualified immunity for the claims stated in Counts I, II, and VI.

Plaintiff names Cook and Chambers in his constitutional claims in Counts I and VI and Cabarrus in Count II. Doc. 15 at 3–4, 7. Cabarrus, Cook, and Chambers argue that they are entitled to qualified immunity. Doc. 97 at 25–27. Because "[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation[,]' *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and

20

omissions. So we must be careful to evaluate a given defendant's qualified-immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018).

Plaintiff's only assertion against Chambers is that she was responsible for booking him into jail. Doc. 15 at 7. While the evidence shows that Chambers's official duties included maintaining headcount and running shifts, such that any challenged action was within the scope of her discretionary authority, the evidence also demonstrates she was not on shift until the morning following Plaintiff's arrest. Doc. 49-2 at ¶¶ 5–8. As a result, she "did not participate in Mr. Ryles' arrest." Doc. 49-2 at ¶ 7.

In response, Plaintiff argues "Chambers began to unlawfully false imprisoning [sic] the Plaintiff into the Russell County Jail[.]" Doc. 98 ¶ 3. At this stage, Plaintiff is tasked with establishing "that: (1) the government actor violated his constitutional or statutory right and (2) the unconstitutionality of that conduct was clearly established at the time of the violation." *Hughes*, 2026 U.S. App. LEXIS 2602, at *7. Plaintiff presents no argument or evidence regarding these elements in relation to Chambers's actions. And given the proof that Chambers was wholly uninvolved in the challenged activity, Plaintiff has not produced evidence showing she violated his constitutional right or was connected in any way to the alleged violations. Thus, Plaintiff fails to "show that qualified immunity is not appropriate." *Brooks*, 78 F.4th at 1280.

As to Cook, Plaintiff alleges he "provided Defendants Berger and Hagberg with the Plaintiffs' description, name[,] and address." Doc. 15 at 3. He also alleges that

"Cabarrus advised Defendant Parker that the Plaintiff had no warrants for his arrest." Doc. 15 at 4.

Cook's primary job duty with the Russell County Sheriff's Office was to answer 911 calls and take calls from officers who reported traffic stops, license plates, and driver's license numbers. Doc. 35-11 at ¶¶ 5–6. He would also provide officers with a person's address as part of his duties. *Id*. at ¶ 6. Cabarrus had similar job duties with the Russell County Sheriff's Office with respect to answering 911 calls and providing information to officers. Doc. 49-1 ¶¶ 4–5. On this record, all of the actions Plaintiff alleges regarding Cook and Cabarrus occurred within the scope of their discretionary authority. *See* Doc. 35-11, Doc. 49-1.

Thus, the burden on qualified immunity shifts to Plaintiff to show how these Defendants violated a constitutional right and the unconstitutional conduct was clearly established at the time. *Hughes*, 2026 U.S. App. LEXIS 2602, at *7. In Plaintiff's Motion for Summary Judgment, he argues that Cook's participation in "providing Defendants with plaintiff's personal information" "allowed the Defedant [sic] Berger to target Plaintiff's vehicle to be illegally stop [sic], seized, assaulted, injured, Kidnaped and false [sic] imprisoned[.]" Doc. 98 at 14.

He also states that "Defendant Parker ran a check on the Plaintiff drivers license . . . threw [sic] 911 dispatcher Defendant Cabrraus [sic]." Doc. 98 ¶ 5. He further alleges Cook and Cabarrus were on duty 911 dispatchers, and Plaintiff alleges they "participate[d] in the unlawful actions of . . . Defendants Hagberg, Berger, and Parker and have personal knowledge of the [illegible] of the Defendants randumly [sic]

22

requested for the Plaintiff's personal NCIC information[.]" Doc. 98 ¶ 2; *see also* Doc. 49-1; Doc. 35-11; Doc. 98-2 at 168.

Nowhere does Plaintiff connect Defendants' actions to a constitutional deprivation. In his Complaint, Plaintiff states that "Defendant Parkers' action violated and continues to violate the Plaintiffs' rights under the Fourth and Fourteenth Amendments," but he does not connect this violation to Defendants Cook or Cabarrus. Doc. 15 at 3–4. Plaintiff has not produced evidence showing how Defendants Cook and Cabarrus's alleged roles in relaying Plaintiff's identity during their shift as 911 operators violates a constitutional right (or has any causal connection to a constitutional violation). Thus, these Defendants are entitled to qualified immunity.

For the reasons articulated above, the undersigned recommends Defendants Cook, Chambers, and Cabarrus are entitled to summary judgment in their favor.

### 2. Defendants Hagberg, Parker, and Berger are entitled to qualified immunity for Plaintiff's false arrest, false imprisonment, and malicious prosecution claims in Counts I, II,[10] VI.

In Count I, Plaintiff alleges that Hagberg, Parker, and Berger violated his constitutional rights by pursuing his vehicle. Doc. 15 at 3. In Count II, Plaintiff claims that Parker, Hagberg, and Berger, conducted an invalid traffic stop and pat-down in violation of the Fourth and Fourteenth Amendments. Doc. 15 at 3–4. In Count VI, Plaintiff alleges that Hagberg, Parker, and Berger committed a false arrest, false

---

[10] Count II is comprised primarily of a conspiracy claim. Doc. 15 at 3–4. However, to the extent Count II contains an allegation of a constitutional violation related to the "unlawful stop, search, and seizure" of Plaintiff's vehicle and the resulting *Terry* pat-down, *id.*, the Court will consider this aspect of Count II within this subsection.

imprisonment, and malicious prosecution. Doc. 15 at 6–7. Defendants argue that they are entitled to qualified immunity on Plaintiff's constitutional claims. Doc. 97 at 20, 27–31.

"False arrest and malicious prosecution are distinct legal grounds for challenging the constitutionality of a seizure." *Currington v. Folk*, 2026 U.S. Dist. LEXIS 29209, at *7–8 (M.D. Ala. Feb. 12, 2026) (citing *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests.")). Claims of false arrest or false imprisonment "accrue when either the seizure ends or the plaintiff is held pursuant to legal process." *Id.* at *8 (quoting *Williams*, 965 F.3d at 1158). In contrast "[m]alicious prosecution . . . requires a seizure 'pursuant to legal process.'" *Williams*, 965 F.3d at 1158 (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)). "A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). "To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022). Likewise, "[w]here a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega*, 85 F.3d at 1526.

In addition, "[t]o establish a federal claim for malicious prosecution under § 1983, a plaintiff must prove (1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable

24

searches." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). A claim of malicious prosecution requires (1) "the legal process justifying [the plaintiff's] seizure was constitutionally infirm," (2) the "seizure would not otherwise be justified without legal process," and (3) "the criminal proceedings against [the plaintiff] terminated in his favor." *Currington*, 2026 U.S. Dist. LEXIS 29209, at *11 (alterations in original) (quoting *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024)).

### a)    *Terry* stop

Defendants argue that Parker had at least arguable probable cause to pull Plaintiff over for speeding and conduct a *Terry* stop to frisk him for weapons. Doc. 97 at 30–32. Plaintiff contends that the *Terry* stop and pat-down following the vehicle stop were unconstitutional. Doc. 15 at 3–4.

An investigative *Terry* stop is justified if there is a reasonable basis for assuming criminal activity occurred or is occurring and the stop was reasonable in scope. *Davis v. Edwards*, 779 F. App'x 691, 695 (11th Cir. 2019) (per curiam). Courts "evaluate the reasonableness of a search under an objective standard, assessing whether the facts known to the officers at the time of the search would cause a reasonable officer under the circumstances to believe that the search was constitutional." *Giddens v. Brooks County*, 2022 U.S. App. LEXIS 7299, *11–12 (11th Cir. Mar. 21, 2022) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). "An officer may conduct a pat-down search of a driver or a passenger during a lawful traffic stop when the officer 'harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous.'" *Id.* at *12 (alteration in original) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327 (2009)).

25

"To determine whether suspicion was reasonable, we evaluate the totality of the circumstances surrounding the stop, including the collective knowledge of all officers involved in the stop." *Id.* (quoting *United States v. Bishop*, 940 F.3d 1242, 1249, (11th Cir. 2019)). "[R]easonable suspicion exists to support a pat-down search of a driver during a traffic stop when (1) officers smelled marijuana and alcohol coming from the car and (2) 'the driver argued with [the officer] at the initiation of the stop.'" *Id.* (alteration in original) (quoting *United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009)). "The Supreme Court has noted that 'nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.'" *United States v. Kinloch*, 2021 U.S. Dist. LEXIS 158079, at *8 (S.D. Ga. July 27, 2021) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). The odor of alcohol coming from a vehicle provides reasonable suspicion for an officer to detain an individual for further investigation. *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006).

Here, Defendants have produced evidence establishing Deputy Parker believed Plaintiff was speeding. *See* Doc. 35-2 at 02:26:50–02:26:53. Further, the bodycam footage shows Plaintiff acknowledging he was speeding. *See id.* at 2:29:05–02:29:24. After approaching Plaintiff's window during the traffic stop, Parker smelled the odor of alcohol and questioned why Plaintiff was acting nervous and then asked Plaintiff to step outside the car for a pat-down search for weapons. *Id.* at 02:26:54–02:27:30; Doc. 35-1 ¶ 5–6; *see also* Doc. 98-3 at 58–61. The circumstances of this stop, including Plaintiff's nervousness and the odor of alcohol, provided Parker with requisite reasonable suspicion

26

to conduct a pat-down search. Thus, Parker's temporary detention of Plaintiff to frisk him for weapons did not violate the Fourth Amendment.

**b)**      **DUI Arrest**

Defendants argue that Parker had at least arguable probable cause to arrest Plaintiff for DUI. Doc. 97 at 30–31. Plaintiff contends Defendants lacked probable cause for his arrest.[11] Doc. 98 at 15.

Probable cause is a bar to § 1983 false arrest, false imprisonment, and malicious prosecution claims. *See Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case*, 555 F.3d at 1327 (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 1327 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

---

[11] Plaintiff disputes probable cause, claiming that he did not violate any laws. Doc. 98 at 12, 16–17. The video evidence submitted on this record belies Plaintiff's representation. While Plaintiff argues because he was acquitted of certain charges in the criminal cases (Doc. 98 at 2) there was no probable cause, he was maliciously prosecuted, and therefore he is now being falsely imprisoned, "the dismissal of charges, or even an acquittal, [does not] vitiate probable cause." *Scott. v. City of Miami*, 139 F.4th 1267, 1276 (11th Cir. 2025) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.")). If the Constitution gave the guarantee that only the guilty would be arrested, "§ 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

27

Moreover, "an officer is still entitled to qualified immunity if arguable probable cause existed." *Id.* (citing *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Id.* (quoting *Lee*, 284 F.3d at 1195).

As stated above, Defendants have established Parker had reasonable suspicion to temporarily detain Plaintiff for a pat-down after Plaintiff was speeding and exhibited signs of nervousness and smelled of alcohol.[12] In addition to these circumstances, when Plaintiff resisted taking any of the roadside DUI tests and refused to follow basic instructions to walk to the trunk of his Cadillac,[13] even after another officer appeared on the scene,[14] these facts and circumstances provided officers with probable cause to believe Plaintiff was intoxicated. *See Miller*, 458 F.3d at 1260 ("A prudent officer could conclude from a refusal to take a test, coupled with the smell of alcohol, that the driver had in fact been drinking."). Taken together, these facts and circumstances support finding the officers had probable cause for Plaintiff's arrest for DUI. Finding any other result would allow for a driver to "escape arrest simply by refusing to cooperate." *Miller*, 458 F.3d at 1260.

---

[12] *See* Doc. 35-1 ¶ 5.

[13] Parker reaffirmed that he needed Plaintiff to comply with directions to go to the back of his vehicle so that they could conduct field sobriety tests. Doc. 35-2 at 02:33:45–02:34:00; Doc. 35-4 at 02:33:39–02:33:40. Plaintiff was told that if he passed the tests he would be free to go, but that if he did not pass then he would be arrested for DUI. Doc. 35-1 ¶ 7; Doc. 35-2 at 02:33:45–02:34:05; Doc. 35-4 at 02:33:40–02:33:55.

[14] Hagberg had been at the scene of the traffic stop for at least a few minutes before the arrest. *See* Doc. 35-2 at 02:29:21–02:29:28; 02:34:15–02:34:21.

Because Defendants had probable cause for the DUI arrest there was no constitutional violation,[15] and Defendants are entitled to qualified immunity from Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution.[16]

### 3. Defendants Parker, Hagberg, and Berger are entitled to qualified immunity for Plaintiff's excessive force and failure to intervene claim in Count III.

In Count III, Plaintiff alleges that Parker, Hagberg, and Berger used excessive force and that Berger failed to intervene in the excessive use of force. Doc. 15 at 4–5.

---

[15] In his declaration, Plaintiff cites portions of the testimonies of Parker, Hagberg, and Berger from his criminal trial to argue they had no probable cause to stop his vehicle. Doc. 115 at 10 (citing selective pages of trial testimony within Doc. 98-3). However, none of these citations support the conclusions Plaintiff asserts.

[16] In passing, Plaintiff labels the traffic stop as racially motivated. Doc. 15 at 3 ("Defendants could observe the Plaintiffs [sic] race and gender because there was no tint on Plaintiffs' [sic] vehicle windows. [O]nce the Defendants Berger and Parker racially profiled the Plaintiff they obtained the Plaintiffs' [sic] license plate number[.]"). In his summary judgment brief he asserts this racially-profiled conclusion, but he puts forward no argument or evidentiary support. Doc. 98 at 1, 4, 11, 12 (claiming Defendants racially profiled him). These passing references to generally characterize as racially-motivated the actions of law enforcement are insufficient to raise this argument for the Court's review or carry Plaintiff's burden on racially-selective law enforcement. *See United States v. F.E.B. Corp.*, 52 F.4th 916, 933 (11th Cir. 2022) ("District courts resolving summary-judgment motions are not on buried-treasure hunts. And '[a] passing reference to an issue in a brief is not enough[.]'" (quoting *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012))).

While a constitutional claim could be raised under the Equal Protection Clause of the Fourteenth Amendment, which "prohibits selective enforcement of the law based on considerations such as race[,]" *Whren v. United States*, 517 U.S. 806, 813, (1996), prevailing on such a claim requires a plaintiff to "demonstrate [the defendants'] enforcement of the law had a discriminatory effect and it was motivated by a discriminatory purpose." *Thomas v. Angle*, 2023 WL 6323791, at *4 (S.D. Ala. Sept. 28, 2023) (alteration in original) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)). Plaintiff would have to show, for example, that similarly situated individuals of a different race did not receive the same treatment by law enforcement. *Id.* (citing *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 1000 (11th Cir. 1995) ("Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement.")). Plaintiff has put forward no evidence to support his conclusion of racial motivation, and as described in the text, the record establishes a lawful basis for his traffic stop and arrest. *See Thomas*, 2023 WL 6323791, at *4 (Plaintiff "does not allege that Lt. Angle was motivated by a discriminatory purpose, nor that similarly situated individuals of a different race have been treated differently." Rather, "she merely asserts in that Lt. Angle racially profiled her. . . . Such a conclusory assertion without supporting facts is insufficient to state a claim for racial profiling under the Fourteenth Amendment.").

29

Plaintiff asserts that the use of force was objectively unreasonable (Doc. 98 at 18) but provides no support for this claim.[17] Defendants argue that their use of force was constitutionally reasonable and that qualified immunity should apply. Doc. 97 at 34–36.

"The Fourth Amendment prohibits the use of excessive force during an arrest." *Baxter v. Roberts*, 54 F.4th 1241, 1268 (11th Cir. 2022). "Unlike a false arrest claim, a genuine excessive force claim is not resolved by the existence of probable cause. Even when an officer has probable cause for an arrest, 'the manner in which a search or seizure is conducted' must nonetheless comply with the Fourth Amendment.'" *Richmond*, 47 F.4th at 1180 (quoting *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted)).

When assessing a use of force, courts are tasked with balancing "the nature and quality of the intrusion on the individual against the government justification for using force." *Id.* at 1182 (citing *Graham*, 490 U.S. at 395). The following factors are

---

[17] Plaintiff cites to a string of cases in his motion that do not support this premise. *See* Doc. 98 at 7 (citing *Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008); *Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1332 (11th Cir. 2006). Taken together, these cases do not support the principle Plaintiff puts forth. The quotation Plaintiff cites to in *Reese* holding that "[i]n the absence of probable cause [the police officer] was not justified in using any force against [the plaintiff]" relates to an arrest in which an officer lacked probable cause. *See* 527 F.3d at 1273. Likewise, Plaintiff includes a quote from *Bashir*, "[I]f an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest." *See* 445 F.3d at 1332. However, Plaintiff cuts out the preceding statement that defines Plaintiff's situation, that "[t]he right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

considered in this balancing: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* In addition, courts look at the (4) justifications for the use of force, (5) "the relationship between the justification and the amount of force," and (6) any resulting injuries. *Id.* "A defendant need not show that all the factors weighed in his favor for his use of force to have been objectively reasonable." *Pequeno v. Seminole Cnty. Ga.*, 623 F. Supp. 3d 1337, 1353 (M.D. Ga. 2022). The Eleventh Circuit's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Baxter*, 54 F.4th at 1269. "Moreover, during an arrest . . . 'the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* (quoting *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000)).

Here, Defendants presented body camera evidence and declarations that clearly show the events surrounding the arrest. *See* Doc. 35-1, Doc. 35-3, Doc. 35-6, Doc. 35-2, Doc. 35-4. The video evidence includes Plaintiff's behavior during the initial stop, the arrest with handcuffs, and his relocation to the police vehicle. Docs. 35-2, 35-4.

The video evidence shows a series of events that are antithetical to Plaintiff's claim that he was forcefully dragged or violently grabbed. Doc. 15 at 5. The officers asked Plaintiff multiple times to relocate behind his Cadillac so the officers could conduct DUI tests on him. Doc. 35-2 at 02:33:45–02:34:00; Doc. 35-4 at 02:33:39–

31

02:33:40. Plaintiff was told that if he passed the tests he would be free to go, but that if he did not pass then he would be arrested for DUI. Doc. 35-1 ¶ 7; Doc. 35-2 at 02:33:45–02:34:05; Doc. 35-4 at 02:33:40–02:33:55

Plaintiff refused to be compliant. Doc. 35-1 ¶¶ 6–7. When Plaintiff ignored Defendants' orders to move behind the Cadillac, Plaintiff was then escorted behind his vehicle. The multiple video angles show no dragging took place during this transfer and Plaintiff walked with at least two of the officers to the location behind his Cadillac where he was handcuffed. Doc. 35-2 at 02:34:21–02:34:54. Doc. 35-4 at 02:34:14–02:35:04. Doc. 35-3 ¶ 4.

Defendants' evidence refutes Plaintiff's allegations that he was "slammed" into his vehicle and "dragged" with his arms above his head. Doc. 15 at 5. Although Plaintiff has declared under penalty of perjury that the allegations he recites are true (Doc. 98), the video evidence directly contradicts his assertions. *McClendon v. Dep't of Juvenile Justice*, 701 F. App'x 771, 773 (11th Cir. 2017) (per curiam) ("In cases where a video in evidence 'obviously contradicts [p]laintiff's version of the facts, we accept the video's depiction instead of [p]laintiff's account,' *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010), and 'view[] the facts in the light depicted by the videotape[.]'") (citing *Scott*, 550 U.S. at 380–81). The video footage shows Plaintiff was neither "slammed" into his vehicle, nor was he dragged. Doc. 35-2 at 02:34:15–02:34:54; Doc. 35-4 at 02:34:14–02:37:00. While behind the Cadillac, Plaintiff is slightly bent over the trunk of his car, and his hands are behind his back being handcuffed. Doc. 35-2 at 02:34:21–02:34:54; Doc. 35-4 at 02:34:47–02:35:04. Behind the Cadillac, Plaintiff

32

remains in a position with the front of his legs pressed against the vehicle. *Id.* at 02:34:48–02:35:17.

Plaintiff alleges Hagberg and Parker beat him up while placing Plaintiff in the patrol car. Doc. 15 at 5. The video shows the opposite. *See* Doc. 35-1 ¶ 8, Doc. 35-3 ¶ 5, Doc. 35-2, Doc. 35-4. Plaintiff cannot create a jury question by simply asserting an allegation that the video evidence refutes. *See McClendon*, 701 F. Appx at 773. In the bodycam footage, it shows the officers telling Plaintiff to stand up and Parker guiding Plaintiff to Parker's vehicle with Hagberg assisting Parker into the vehicle. Doc. 35-4 at 02:35:30–02:37:00. Plaintiff resisted getting into the patrol vehicle, so one of the officers "pulled his upper body from the other side of the vehicle while the other picked up his legs and maneuvered them inside the car." Doc. 35-3 ¶ 5; Doc. 35-4 at 02:36:30–02:37:00.

Per the evidence, the chain of events show officers considered, "the severity of the crime at issue" which was a suspected DUI after being pulled over for speeding. *Richmond*, 47 F.4th at 1180. It further illustrates Plaintiff would not consent to any of the routine DUI tests onsite warranting his arrest for the suspected DUI because he "pose[d] an immediate threat to the safety of the officers or others." *Id.* The evidence further showed in the course of the arrest that Plaintiff was screaming and resisting being handcuffed and taken into custody. *Id.*

Viewing the evidence in its entirety, the officers were entitled to use force in arresting Plaintiff because of the suspected DUI charge, the threat he posed to the public by driving while intoxicated, and because he was resisting arrest. The force used was

33

minimal: he was handcuffed and placed in the patrol car against his will. Even painful

handcuffing and being physically moved by officers does not establish excessive force.

*See Baxter*, 54 F.4th at 1269.

> In cases strongly resembling this one, we have repeatedly held that similar uses of force in arrest scenarios passed constitutional muster. *See, e.g., Myers v. Bowman*, 713 F.3d 1319, 1327–28 (11th Cir. 2013) (holding that the officer did not use excessive force when he "grabbed [the plaintiff] by the arm, forced him to the ground, placed him in handcuffs, and searched him"); *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002) (holding that officer did not use excessive force when he "grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that [the officer] was hurting him").

*Id.* Here, Plaintiff does not show his circumstances have met the standard for excessive

force. Despite presenting an alternative factual summary, Plaintiff presents no genuine

dispute of material fact concerning the officers' reasonable use of force. For these

reasons, Defendants are due summary judgment on Plaintiff's claims of excessive

force.[18]

### 4. Defendants' search of Plaintiff's vehicle was a valid inventory search.

In Count V, Plaintiff alleges Defendants lacked probable cause in conducting the

search and seizure of Plaintiff's vehicle because he was not violating any law. Doc. 15

at 6. In his motion, Plaintiff does not expand on this argument any further. Doc. 98.

Defendants argue in their motion that (1) Plaintiff consented to the search of his vehicle,

---

[18] Plaintiff also contends that Berger failed to intervene in the use of force. Because Defendants' use of force was not excessive, Berger had no duty to intervene and summary judgment is due to Defendants on this failure to intervene claim. *See Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1357 (11th Cir. 2015) (per curiam) (affirming district court's grant of summary judgment because "a police officer has no duty to intervene in another officer's use of force when that use of force is not excessive.").

and (2) Defendants' search of the vehicle was a permissible inventory search. Doc. 97 at 32–33.

"[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "The Supreme Court has recognized the reasonableness of inventory searches when executed in accordance with standard police practice." *United States v. Laing*, 708 F.2d 1568, 1570 (11th Cir. 1983) (per curiam). "Judicial tolerance of such searches derives from the need to protect the owner's property, to protect the police from disputes over lost property and to protect the police from potential danger." *Id.* "To conduct a routine inventory check, law enforcement officials need not obtain a warrant." *Id.* "However, 'inventory searches must be limited to effectuation of the recognized purposes, for which they are conducted and they may not be used as a pretext for intrusive investigatory searches that would otherwise be impermissible.'" *Id.* (quoting *United States v. Prescott*, 599 F.2d 103, 105 (5th Cir. 1979)).[19]

"An inventory search is not a surrogate for investigation, and the scope of an inventory search may not exceed that necessary to accomplish the ends of the inventory." *United States v. Khoury*, 901 F.2d 948, 958 (11th Cir. 1990). Ultimately, "the reasonableness of the inventory search depends on the particular facts and circumstances." *Laing*, 708 F.2d at 1571. "When analyzing the reasonableness of an inventory search, a court must determine (1) whether the police had the authority to

---

[19] Opinions issued by the former Fifth Circuit prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

impound the vehicle, and (2) whether the officers followed relevant procedures governing inventory searches." *United States v. Gordon*, 2025 U.S. App. LEXIS 18786, at *7 (11th Cir. July 29, 2025) (per curiam) (citing *United States v. Williams*, 936 F.2d 1243, 1248 (11th Cir. 1991)); *see also United States v. Gilreath*, 2024 U.S. Dist. LEXIS 156481, at *33–34 (M.D. Ala. Aug. 1, 2024), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 155429 (M.D. Ala. Aug. 29, 2024) (finding that "the decision to impound Defendant's vehicle and the inventory search . . . was reasonable" when "there [was] no evidence before the Court suggesting that the inventory search was improperly motivated" (citing *United States v. Crawford*, 294 F. App'x 466, 472 (11th Cir. 2008) ("[T]he mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search.") (internal quotations omitted))). "An officer has the authority to impound a car if his decision to impound is in good faith, based upon standard criteria, and not solely based upon suspicion of evidence of criminal activity." *United States v. Isaac*, 987 F.3d 980, 988–89 (11th Cir. 2021) (internal citations omitted).

Here, the particular facts and circumstances reveal that after Plaintiff's arrest, Berger and Hagberg remained behind to conduct the inventory search. Doc. 35-3 ¶ 6. The Vehicle Impoundment Record shows that Plaintiff's vehicle was impounded following Plaintiff's arrest for DUI and that Parker made the report.[20] Doc. 35-10. The

---

[20] Berger testified that Parker's name is on the report because he is the arresting officer even though Berger stayed with the vehicle to complete the report with the tow truck driver. Doc. 35-6 ¶ 6–7; Doc. 35-10.

Vehicle Impoundment Record further lists the personal property left in Plaintiff's vehicle. Doc. 35-10.

In his declaration, Berger testified that the purpose of the Vehicle Impound Record was to "report[] what is in the vehicle and the condition of the vehicle at the time it [was] being towed." Doc. 35-6 ¶ 6. He indicates that not every object in the vehicle needs to be recorded in the report. *Id.* This aligns with the Vehicle Impound Record which lists various items in Plaintiff's car but does not list everything that was viewable in the video recording. *See* Doc. 35-10; Doc. 35-5. Hagberg's bodycam footage shows Hagberg and Berger conducting the inventory search after Plaintiff's arrest. *See id.* In Hagberg's declaration, he indicates that during the course of this search, nothing was destroyed, and no seats or carpet were removed. Doc. 35-3 ¶ 6.

In addition to this evidence, Defendants also introduce the Russell County Sheriff's Office Policies and Procedures. Doc. 97-1.[21] Section 2-33, the

---

[21] "Pursuant to FRE 901(a), a document submitted as evidence must be properly authenticated 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Lanzon*, 639 F.3d 1293, 1301 (11th Cir. 2011) (citing FRE 901(a)). "Evidence may be authenticated through the testimony of a witness with knowledge." *Id.* (citing FRE 901(b)(1)). However, "a court may consider unauthenticated evidence on a motion for summary judgment if the evidence is unchallenged or 'where it finds that those records could be reduced to admissible evidence at trial.'" *Martin v. Allied Interstate, LLC*, 192 F. Supp. 3d 1296, 1302 (S.D. Fla. 2016) (quoting *Mims v. Old Line Life Ins. Co. of America*, 46 F. Supp. 2d 1251, 1259–60 (M.D. Fla. 1999)); *see also Riley v. Univ. of Ala. Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1186 (N.D. Ala. 2014) ("Of course, evidence submitted in support of, or in opposition to, a motion for summary judgment does not have to be admissible under the Federal Rules of Evidence as long as it could be reduced to an admissible form at trial." (citing *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) *aff'd sub nom. McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781 (1997) ("We read this statement as simply allowing *otherwise admissible* evidence to be submitted in *inadmissible form* at the summary judgment stage, though at trial it must be submitted in admissible form."))

Here, Defendants have filed the Russell County Sheriff's Office Policies and Procedures without authenticating the document with testimony. Despite the lack of authentication, Plaintiff has not challenged this evidence, and the Court finds no reason why "[D]efendant[s] would be unable to

"Towing/Wreckers" section (Doc. 97-1 at 226–228) establishes the necessary procedures for towing vehicles, including when encountering situations with DUI vehicles. One subsection iterates: "If the suspect . . . [d]oes not request a particular tow service to move an illegally parked or hazard-creating vehicle, the Peace officer may order it towed for safekeeping at the owner's expense." Doc. 97-1 at 227. This section also includes an inventory policy providing that "[a] vehicle inventory tow-in report will be completed when an Officer assumes responsibility for towing a vehicle, and complete an inventory list before allowing the wrecker driver to pull the vehicle." Doc. 97-1 at 228.

When considering whether the officers had the authority to impound the car, the Court will look to whether the decision was in good faith, based upon standard criteria, and not suspicion of criminal activity. *Isaac*, 987 F.3d at 988–89. Here, as Defendants note in their motion, "the events prior to the search—the speeding, evidence of DUI, [and] Plaintiff's behavior"—provided a good faith basis to impound the vehicle. Doc. 97 at 33. Further, the Russell County Sheriff's Office Policies and Procedures showed that Defendants had and followed procedures for towing vehicles in the DUI-specific context. Doc. 97-1 at 226–28. The policy clearly sets out that when the Sheriff assumes

---

authenticate these same . . . records if required to do so for trial." *Mims*, 46 F. Supp. 2d at 1260; see also *Abbott v. Elwood Staffing Servs.*, 44 F. Supp. 3d 1125, 1135 (N.D. Ala. 2014) ("Thus, under current Rule 56, an objection cannot be based solely on evidence not being authenticated—the objection must be that evidence *cannot* be presented in admissible form, not that the evidence *has not* been presented in admissible form."). For this reason, the Court finds it appropriate to refer to this evidentiary submission for purposes of resolving summary judgment.

responsibility for towing a vehicle, a vehicle inventory tow-in report must be completed. Doc. 97-1 at 228.

Ultimately, these circumstances substantiate Defendants' argument that they had the authority under their policy to conduct an inventory search under these circumstances to protect the police department from danger and reports of lost property before the vehicle was towed. *See Gordon*, 2025 U.S. App. LEXIS 18786, at *7; Doc. 97-1 at 228. Berger's testimony demonstrates the inventory policy procedures were followed as confirmed by the vehicle impound record. *See* Doc. 35-6 ¶ 6; *Gordon*, 2025 U.S. App. LEXIS 18786, at *7. The search of Plaintiff's vehicle was a valid inventory search.

For these reasons, the undersigned finds Defendants are due summary judgment on Plaintiff's claim regarding the search and seizure of his vehicle, and this claim is due to be dismissed.

### D. <u>The Court declines to exercise supplemental jurisdiction over Plaintiff's state law tort claim.</u>

In Count IV, Plaintiff alleges that Parker, Hagberg, and Berger committed the tort of assault and battery. Doc. 15 at 4–5. Plaintiff presented no further argument or authority supporting this claim in his Motion for Summary Judgment. Doc. 98. Defendants urge that supplemental jurisdiction should not be exercised at this stage if all of Plaintiff's Section 1983 claims are dismissed. Doc. 97 at 38–39.

Pursuant to § 1367, the Court can decline to exercise supplemental jurisdiction in the following circumstances:

> (1) the state claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the federal claim or claims over

which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Nelson v. Atl. Glob. Fin., Inc.*, 725 F. Supp. 3d 1288, 1295 (M.D. Ala. 2024) (citing 28 U.S.C. § 1367(c)).

After dismissing a plaintiff's federal claims, a court has the discretion to exercise supplemental jurisdiction over any remaining state law claims or to dismiss the state law claims. *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022). "That discretion is 'expressly conferred to district courts by statute.'" *Id.* at 866 (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (citing 28 U.S.C. § 1367(c))). "Where § 1367 applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Bagget v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997)). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial." *Silas*, 55 F.4th at 866 (quoting *Raney v. AllState Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam)).

Here, as Plaintiff's federal claims are due to be dismissed, Plaintiff's case no longer has a basis for federal jurisdiction. *See id.* Thus, as Plaintiff has failed to establish a federal claim, and has alleged no basis of diversity jurisdiction, Plaintiff's state law claims cannot proceed. Plaintiff's state law claims are due to be dismissed.

## VIII.  CONCLUSION

For these reasons, the undersigned RECOMMENDS Defendants' Motion for Summary Judgment (Doc. 96) be GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 98) be DENIED.

It is further ORDERED that on or before **March 13, 2026**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *See* 11TH CIR. R. 3-1.

DONE this 27th day of February, 2026.

_____
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE

41